```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Susan C. Earley,               :

    Plaintiff,             :

    v.                     :        Case No. 2:05-cv-0835

United Airlines, et al.,       :        MAGISTRATE JUDGE KEMP

    Defendants.            :

<u>OPINION AND ORDER</u>

This diversity action is before the Court on defendant United Airlines' ("United") motion for summary judgment. This case has been referred to the Magistrate Judge for full disposition under 28 U.S.C. §636(c). For the following reasons, United's motion for summary judgment will be granted.

I.

The following facts are taken from the complaint and plaintiff Susan Earley's deposition, which is the only evidence filed by either party. On August 19, 2003, Ms. Earley was a passenger on United Flight 62 from San Francisco, California to Honolulu, Hawaii and was seated next to the window. The airplane only had two seats on Ms. Earley's side of the aisle, and the other seat adjacent to Ms. Earley was unoccupied during the flight.

During the flight, Ms. Earley left her seat to use the restroom. When she returned, she sidestepped to the left while facing the front of the airplane in order to get back into her seat. While one foot was in front of her window seat, and her other foot and body were in front of the unoccupied aisle seat, the tray table attached to the back of the seat immediately in front of the unoccupied seat fell and struck Ms. Earley. This caused Ms. Earley to lose her balance and fall into the aisle seat, twisting

her knee in the process.  (Dep. of Ms. Earley at pp. 39; 44.)

Ms. Earley felt a "sharp, stabbing pain" in her knee as a result of the fall but did not report the incident or pain to anyone on the airplane.  According to Ms. Earley, after the tray table fell on her, it randomly fell more times during the duration of her flight.  She did not notify anyone of the problem.  At some later date, Ms. Earley went to the emergency room and was diagnosed with a torn anterior cruciate ligament and torn meniscus in her left knee, which required surgery.

II.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.  The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978).  Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine

issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464, 467 (1962); <u>accord</u>, <u>County of Oakland v. City of Berkley</u>, 742 F.2d 289, 297 (6th Cir. 1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Anderson</u>, 477 U.S. at 250.

> The primary difference between the two motions is procedural:  summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 745, n. 11 (1983).  In essence, though, the inquiry under each is the same:  whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action."  <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970) (footnote omitted); <u>accord</u>, <u>Adams v. Union Carbide Corp.</u>, 737 F.2d 1453, 1455-56 (6th Cir. 1984), <u>cert</u>. <u>denied</u>, 469 U.S. 1062 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  <u>United States v. Diebold, Inc.</u>, 369

U.S. 654, 655 (1962); Watkins v. Northwestern Ohio Tractor Pullers Association, Inc., 630 F.2d 1155, 1158 (6th Cir. 1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes, 398 U.S. at 157-60; Smith v. Hudson, 600 F.2d 60, 65 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 251. As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 259 (1968) (footnote omitted).

III.

A. The Parties' Arguments.

Ms. Earley's claim for negligence is grounded on three

4

theories - negligence *per se, res ipsa loquitur*, and general negligence. Under Ms. Earley's negligence *per se* theory, she claims that United violated 14 C.F.R. §121.577, which requires an airline to stow food, beverage and tray tables during taxiing, take-off and landing.[1] Under her *res ipsa loquitur* theory, Ms. Earley argues that United is liable because it had exclusive control over the tray table that struck her and a falling tray table is not a usual event that occurs if ordinary care is observed. Finally, she contends that there is sufficient evidence from which a reasonable person could conclude that United breached the duty of care it owed to her as a passenger of a common carrier.

In response, United argues that the negligence *per se* claim fails as a matter of law because 14 C.F.R. §121.577 concerns the stowage of tray tables during taxiing, take-off and landing, whereas Ms. Earley suffered her injury an hour into the flight. United also disputes that *res ipsa loquitur* is applicable to this situation because it did not exercise exclusive control over the

---

[3] 14 C.F.R. §121.577 states:

(a) No certificate holder may move an airplane on the surface, take off, or land when any food beverage, or tableware furnished by the certificate holder is located at any passenger seat.

(b) No certificate holder may move an airplane on the surface, take off, or land unless each food and beverage tray and seat back table tray is secured in its stowed position.

(c) No certificate holder may permit an airplane to move on the surface, take off, or land unless each passenger serving cart is secured in its stowed position.

(d) No certificate holder may permit an airplane to move on the surface, take off, or land unless each movie screen that extends into an aisle is stowed.

(e) Each passenger shall comply with instructions given by a crewmember with regard to compliance with this section.

tray table. Finally, United contends that it is not liable because it was not aware of the allegedly broken tray table. For support, United highlights the fact that Ms. Earley did not inform any flight personnel of the falling tray table or, through discovery, obtain any records that would demonstrate that United was aware of the allegedly broken tray table but ignored its potential danger. Finally, United claims that Ms. Earley's injuries were unforeseeable, and, therefore, Ms. Earley cannot make a successful negligence claim.

### B. Negligence *Per Se*

The doctrine of negligence *per se* is not a cause of action separate from a tort claim sounding in negligence, but it does not permit a plaintiff to demonstrate negligence by showing that the defendant violated a specific rule of conduct rather than by having to prove a breach of the duty of ordinary care by more generalized evidence. As the Ohio Supreme Court stated in Swoboda v. Brown, 129 Ohio St. 512, 522 (1935)(internal quotations omitted):

> The distinction between negligence and negligence per se is the means and method of ascertainment. The first must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required.

In other words, if a legislative enactment imposes a specific duty for the safety of others, the failure to perform that duty is negligence *per se*. Eisenhuth v. Moneyhon, 161 Ohio St. 367, paragraph two of the syllabus, (1954).

Here, for the following reasons, Ms. Earley cannot reply upon 14 C.F.R. §121.577 to prove duty and breach under the doctrine of negligence *per se*. First, under Ohio law, a violation of an administrative rule can be evidence of negligence but does not

6

constitute negligence *per se*. Chambers v. St. Mary's School, 82 Ohio St.3d 563, 568 (1998). Thus, following Chambers, the violation of a Federal Aviation Administration ("FAA") regulation, which is an administrative rule, is only evidence of negligence but cannot constitute negligence *per se*. Second, and perhaps most importantly, 14 C.F.R. §121.577 concerns the stowage of food, beverages, and tray tables while an airplane is taxiing, taking off, and landing. Here, according to Ms. Earley herself, the tray table fell approximately one hour into the flight. Although the lapse of a very short period of time between one of the activities described in the regulation and the falling of a tray table might be evidence that the table was not properly stowed, the fact that it did not fall until an hour after take-off, and after Ms. Earley left her seat for a time, is enough to prevent any inference of improper stowage of the table during take-off from being drawn. Accordingly, there are no genuine issues of material fact allowing Ms. Earley to prove negligence *per se*.

The Court also notes that in Rimer v. Rockwell Int'l Corp., 641 F.2d 450 (6th Cir. 1981), a case decided prior to Chambers, the Court of Appeals concluded that FAA regulations that provide for general standards of conduct, and not specific duties, cannot be used in establishing negligence *per se* under Ohio law. 14 C.F.R. §121.577 appears to establish a general standard of conduct because it does not impose a specific duty on an airline employee to do a particular act. See id. at 455. Thus, for this additional reason, the Court concludes that Ms. Earley cannot, as a matter of law, demonstrate United's liability under a negligence *per se* theory.

### C. *Res Ipsa Loquitur*

The doctrine of *res ipsa loquitur* is, like negligence *per se*, not a substantive rule of law that furnishes an independent ground for recovery. Rather, it is an evidentiary tool that allows a jury to infer negligence when the logical premises for the inference are

7

demonstrated. <u>Glowacki v. North Western Ohio Ry. & Power Co.</u>, 116 Ohio St. 451, paragraph one of the syllabus (1927). In order for a plaintiff to use the doctrine, the plaintiff must submit evidence that (1) the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. <u>Hake v. Wiedemann Brewing Co.</u>, 23 Ohio St.2d 65, 66-67 (1970). The Ohio Supreme Court elaborated:

> The second prerequisite set forth in Hake, that there must be evidence tending to prove that the injury ordinarily would not have occurred if ordinary care had been exercised, serves to establish the logical basis for the inference that the plaintiff's injury was the proximate result of someone's negligence. The first prerequisite, that there must be evidence tending to prove that the instrumentality causing the injury was under the exclusive management and control of the defendant, permits the further inference that it was the defendant who was negligent.

<u>Jennings Buick, Inc. v. City of Cincinnati</u>, 63 Ohio St.2d 167, 170-71 (1980). "Ordinarily the rule of res ipsa loquitur is not applicable against a party because of an instrumentality causing injury and damage to another unless such party had exclusive possession, control and management of the instrumentality at the time it caused the injury." <u>Koktavy v. United Fireworks Mfg. Co.</u>, 160 Ohio St. 461 at paragraph one of the syllabus (1954). This includes a showing that the instrumentality "could not have been mishandled or tampered with between the time of its leaving of the custody between the one sought to be charged and the time of the accident causing injury." <u>Id.</u> at 471-72.

For guidance, the Court turns to <u>Thompson v. Chautauqua Airlines, Inc.</u>, No. 3:04-0811, 2005 WL 3216303 (M.D. Tenn. Nov. 28,

2005). In Thompson, the plaintiff filed suit against Chautauqua Airlines ("Chautauqua") because a tray table "unexpectedly and without warning fell and struck [the plaintiff] in her face." Id. at *1. Specifically, the plaintiff claimed that while she was leaning over her seat to retrieve her purse, the seatback tray table suddenly fell and struck her nose, which caused severe injuries to her nasal cavities and sinuses. Id.

In that case, it was undisputed that the tray table was locked and in its upright position prior to its falling and striking the plaintiff. Id. Additionally, the plaintiff never lowered the tray table prior to the accident. Id. The plaintiff filed a negligence action relying on the inference of negligence under the doctrine of *res ipsa loquitur* and the specific act of negligence. The plaintiff did not take any depositions or request a single document from Chautauqua.

The trial court rejected the plaintiff's *res ipsa loquitur* theory, stating, *inter alia*:

> Because the plaintiff cannot demonstrate that the tray table which injured her was in the "exclusive management and control" of defendant or its servants and that her injury is of the type that does not occur absent someone's negligence, the doctrine is inapplicable and plaintiff must show some specific act of negligence causing her injury to avoid summary judgment.
>
> ***
>
> There is simply not enough evidence for a fact-finder to do anything more than speculate as to the condition causing injury or to the party responsible for it. In order to apply *res ipsa* to the facts of a case, the balance of probabilities must enable the fact-finder to make more than a sheer leap of faith to establish that negligence was present. 4 Fowler V. Harper el al., The Law of Torts §§19.5, at 25 (2d ed.1986). Because it is not

>at all clear that the instrumentality creating the harm was controlled solely by the defendant, and it is possible that this harm could have occurred absent any negligence on the part of the defendant, plaintiff cannot claim the benefit of an inference of negligence under the *res ipsa loquitur* doctrine.

Id. at *3; see also Carr v. May Dep't Stores Co., No. 77290, 2000 WL 1369902 (Ohio App. 8th Dist. Sept. 21, 2000)(department store did not have exclusive control over mannequin in public display area because other employees and the general public had access to it); Davis v. City of Akron, No. CA 19553, 2000 WL 254900 (Ohio App. 9th Dist. March 8, 2000)(city not in exclusive control over seats in courtroom because the seats were used by many people); Cochran v. Ohio Auto Club, No. 9-96-33, 1996 WL 562055 (Ohio App. 3rd. Dist. Oct. 3, 1996)(auto club not in exclusive control over chair that many people used in business common area). Although Thompson relied on Tennessee law, the law of Ohio and Tennessee regarding *res ipsa loquitur* is essentially the same, and the Court finds Thompson's analysis persuasive.

In the instant case, Ms. Earley's evidence - her own testimony - is insufficient to support an inference that the tray table was under United's exclusive control at all times before it fell on her. Even though the jury could find that Ms. Earley did not tamper with or use the tray table prior to the accident, the evidence does not exclude the possibility that someone other than United also exercised control of the tray table or latch. For example, it is possible that during the airline boarding process another passenger could have tampered with (intentionally or unintentionally) the tray table or the latch. The same thing could have occurred while Ms. Earley was in the restroom. Undoubtedly, the airplane's fuselage is a common area where both airline passengers and other airport personnel besides United

10

employees could have tampered with or used the tray table prior to the accident. Those possibilities negate, as a matter of law, any inference that the tray table was under United's "exclusive control," and that defeats a claim based on *res ipsa loquitur.*

### D. Ordinary care

In order to prove negligence absent some specialized doctrine such as negligence *per se* or *res ipsa loquitur,* a plaintiff must demonstrate (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury. Wellman v. East Ohio Gas Co., 160 Ohio St. 103, 108-09 (1953). It is well-settled in Ohio law that an airline is a common carrier, see, Khourey v. American Airlines, Inc., 170 Ohio St. 310 (1960)(American Airlines is a common carrier), Moon v. Northwest Airlines, No. 99AP-1104, 2000 WL 757577 (10th Dist. June 13, 2000)(Northwest Airlines is a common carrier), Bodley v. U.S. Air, Inc., No. 97APE03-430, 1997 WL 770993 (10th Dist. Dec. 9, 1997)(U.S. Airways is a common carrier), and common carriers owe a duty to their passengers to exercise the highest degree of care consistent with the practical operation of the carrier. Brinkmoeller v. Wilson, 41 Ohio St.2d 223, 225 (1975). This duty includes warning passengers of dangerous conditions known to or reasonably ascertainable by the common carrier. James v. Wright, 76 Ohio App.3d 493, 495 (10th Dist. 1991). However, that duty extends only to perils that the passengers are not expected to discover or protect themselves against. Baier v. Cleveland Ry. Co., 132 Ohio St. 388, 392-93 (1937).

Because United is a common carrier, it is undisputed that United owed Ms. Earley a duty to exercise the highest degree of care consistent with the practical operation of the carrier. When viewing the facts in a light most favorable to Ms. Earley, however, there are no genuine issues of material fact as to whether United

11

breached that duty.  It is not practical to expect United to inspect the working condition of every tray table at all times during a flight.  The key concept relating to the duty a common carrier owes is "care consistent with the practical operation of the carrier," and requiring United to inspect every seat, tray table, latch, or overhead compartment on a continuous basis is unpracticable.  See, e.g., Rahman v. Greater Cleveland Regional Transit Authority, No. 66166, 1994 WL 245646 at *1 (Ohio 8th Dist. June 2, 1994)("As those who are familiar with life in Cleveland during the winter months, it would be an impossible task to keep the [bus] steps completely free of slush and remain responsible for driving the bus route").

Additionally, as the Thompson court noted:

> As alluded above, the plaintiff cannot show that the tray table or its latch was defective, or that the defendant were somehow negligent in maintaining it.  After ample time for discovery, the plaintiff has not demonstrated any proof other than the fact of her injury to establish that the tray table was unsafe or otherwise hazardous.  Absent such a showing, a reasonable fact-finder would be forced to resort to speculation and conjecture to determine whether defendant breached its duty.  The record does not demonstrate how the latch was defective, if at all, and does not foreclose the possibility of causes for the injury not linked to the defendant's alleged negligence.
>
> ***
>
> *** It is undisputed that the tray table itself caused plaintiff's injuries, but it is not all clear that this injury was brought about by the defendant's negligence.  Absent some showing that there was a failure to maintain the tray table or latch in a safe condition or that tray table possessed characteristics requiring the defendant to warn of its condition, the plaintiff simply

>       cannot succeed in proving that her injuries
>       were more probably caused by the defendant's
>       negligence than by any other possible
>       explanation.

Thompson, 2005 WL 3216303 at *4-5.

As the record demonstrates, there is no evidence that United was aware of a faulty tray table or latch, and there is no evidence that the latch or tray table was defective. The only evidence filed in this case is Ms. Earley's deposition. She has not submitted any documents from United that could indicate that the particular tray table or latch was defective or broken and susceptible to random falling, or that United was on notice that there was a problem with the latch, or even that United failed to make periodic inspections of tray table latches. Based on this record, a jury could infer either that the latch was inspected right before the passengers on Ms. Earley's flight boarded or that United did not routinely inspect such latches. Choosing between these inferences, however, could be based only on sheer speculation. There is simply no way for a jury to determine here that United breached whatever duty it had to inspect such latches.

Had United known (or if it should have known) that the tray table was broken and ignored the problem, Ms. Earley could reasonably argue that United breached its duty to Ms. Earley. See, e.g., Johnson v. Glassman, No. 2005-L-107, 2006-Ohio-1790 (11th Dist. April 7, 2006)(store did not have notice, constructive or actual, that there was a puddle in the aisle); DeVault v. St. Charles Mercy Hosp., No. L-05-1292, 2006-Ohio-1626 (6th Dist. March 31, 2006)(hospital did not have notice of liquid on the floor prior to slip-and-fall); Mallard v. Greater Cleveland Regional Transit Authority, No. 70761, 1997 WL 298133 (8th Dist. June 5, 1997)(defendant not on notice, either constructive or actual, that there was debris in the aisle prior to passenger slipping on the debris and falling). However, without evidence that United had

such knowledge or that it could have acquired such knowledge through the exercise of its duty of care to its passengers, there is simply no basis upon which a jury could conclude that United was negligent.

IV.

This is an unfortunate case of an airline passenger being injured through no apparent fault of her own. However, the law requires something more than proof that an accident occurred on an airplane in order to hold the airline liable for a passenger's injury. That proof is absent here. Consequently, for the foregoing reasons, United's motion for summary judgment (doc. #33) is GRANTED, and the case is DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment in favor of the defendant.

/s/ Terence P. Kemp
United States Magistrate Judge